TELEVIDEO SYSTEMS, INC., Plaintiff,

v.

John J. MAYER, Lawrence Mayer and Stephen E. Ouelette d/b/a John J. Mayer & Associates, Defendants.

No. 86 Civ. 2327 (SWK).

United States District Court,
S.D. New York.

Oct. 8, 1991.

Teitelbaum, Braverman & Borges, Great Neck, N.Y. by Mark L. Goldman, for plaintiff.

DeOrchis & Partners, New York City by M.E. DeOrchis, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Televideo, Inc. ("Televideo") brought this diversity action against defendant John J. Mayer ("Mayer") d/b/a John J. Mayer & Associates, in connection with a contract to sell various computer wares to a Hawaiian firm called John J. Mayer & Associates ("Mayer–Hawaii"). Televideo sought to recover an amount allegedly due under the contract from Mayer as a partner of Mayer–Hawaii. By order dated December 5, 1991, this Court dismissed the action with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure after Televideo refused to proceed to trial. Mayer now moves for the imposition of sanctions against the law firm of Teitelbaum, Braverman & Borges ("Teitelbaum"), counsel for Televideo, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

## BACKGROUND [1]

Televideo is a California computer retailer. Mayer owns and operates a marketing and product development concern in New York called "John J. Mayer & Associates" ("Mayer–New York"). His son, Lawrence Mayer, runs Mayer–Hawaii and sells computers and other electronic goods under the "John J. Mayer & Associates" name.[2] Affidavit of M.E. DeOrchis, sworn to January 30, 1991 ("DeOrchis Aff."), at ¶¶ 26, 30. The parties dispute neither that Mayer was aware that his son operated a business which used the "John J. Mayer" name nor that he generally supported and approved of his son's business efforts.[3]

According to the terms of a contract between Mayer–Hawaii and Televideo dated August 19, 1983 (the "Contract"), Mayer–Hawaii agreed to integrate and distribute certain Televideo products in conjunction with its own computer marketing efforts. The Contract applied to those products ordered by Mayer–Hawaii from Televideo during the period September 1, 1983 through August 31, 1984.

After signing the Contract, Televideo received Mayer–Hawaii's financial statement, credit application and Dun and Bradstreet Credit Report.[4] The credit application lists

---

1. In construing the facts of this case the Court has relied upon the parties' affidavits, briefs and exhibits. The Court draws all inferences from contested facts in favor of the plaintiff-opponent. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985); *Nassau–Suffolk Ice Cream, Inc. v. Integrated Resources, Inc.*, 118 F.R.D. 45, 48 (S.D.N.Y.1987).

2. The relationship between these two entities was a central issue in the underlying action, and is contested by both parties here. Nothing in this opinion shall be construed as a finding of fact concerning the relationship between Mayer–Hawaii and Mayer–New York.

3. In one instance, Mayer corresponded with Micropro International Corp. ("Micropro") on his son's behalf. Mayer sent Micropro a copy of his own "finance statement as well as a description of his firm and the activities of its Hawaiian 'affiliate.'" DeOrchis Aff. at ¶ 29.

4. Teitelbaum originally claimed that Televideo received and reviewed this financial information prior to contracting with Mayer–Hawaii, and agreed to contract with the Hawaiian firm in reliance upon the strong financial data the documents presented. *See* Affidavit of Howard Haller in Support of Plaintiff's Motion for Summary Judgment, sworn to August 23, 1986, at ¶ 4.

The Contract is dated August 19, 1983. The credit application is dated August 24, 1983, the financial statement's cover letter is dated August 22, 1983, and the Dun and Bradstreet report was issued September 9, 1983. The dates of these documents undermine Teitelbaum's original position that "following a review of the credit request application and financial statement submitted by John J. Mayer & Associates, as well as the independent reports, Televideo did enter into a written agreement with John J. Mayer & Associates." Amended Joint Pre-Trial Order dated March 23, 1990, at ¶ 6(6). In defending against the instant motion, Teitelbaum has retreated in part from this position. Teitelbaum now contends that the financial documents it purports to have relied upon were received and

a "Jack" Mayer as President and General Partner of "John J. Mayer & Associates." The financial statement's letterhead indicates that "John J. Mayer & Associates" has offices in Hawaii, California and New York. The letterhead also indicates that the New York office address is that of Mayer–New York. The Dun and Bradstreet Credit Reports for both Mayer–Hawaii and Mayer–New York indicate that Mayer–Hawaii is a "branch" of Mayer–New York but identify the entities with discrete "Duns Numbers." Televideo delivered the goods which were the subject of the Contract to Mayer–Hawaii "on, about or between" August 19, 1983 and August 31, 1984." Goldman Aff. at 2. The alleged agreed-upon price and reasonable value of this merchandise was $71,240.00. *Id.* at ¶ 3.

Televideo subsequently initiated this action against John J. Mayer, Lawrence Mayer and Stephen E. Ouelette d/b/a John J. Mayer & Associates, to recover the purchase price of the goods sold to Mayer–Hawaii, contending that Mayer–Hawaii never paid for the goods. Televideo, however, served only John J. Mayer and proceeded against neither of the other defendants. The complaint alleged that Mayer–Hawaii and Mayer–New York were partners, thereby making John Mayer jointly liable for Mayer–Hawaii's debts as the sole owner of Mayer–New York. Televideo intended to prove this partnership at trial in part through the testimony of one Howard Haller. Haller was then a Televideo sales representative who purportedly had a telephone conversation with Mayer during which Mayer is purported to have admitted that Mayer–Hawaii and Mayer–New York were "affiliated." Goldman Aff. at 9.

Mayer defended Televideo's action on the grounds that Mayer–Hawaii and Mayer–New York were distinct entities and, as such, not liable for the debts of the other. Mayer informed Televideo, both orally and in writing, that Mayer–Hawaii and Mayer–New York were unconnected, and denied contacting Haller or any other Televideo representative except to protest the suit against him.

In September 1986, Televideo and Mayer cross-moved for summary judgment. The Court denied both motions, holding that the issue of whether Mayer–Hawaii and Mayer–New York were partners remained a triable issue of fact. *Televideo Systems, Inc. v. John J. Mayer et. al.,* No. 86–2327, slip op. (S.D.N.Y. May 20, 1987). In commenting upon the sufficiency of plaintiff's documentary evidence for establishing entitlement to judgment as a matter of law, the Court observed that each of the documents relied upon by plaintiff in connection with its decision to do business with Mayer–Hawaii, e.g., the August 24, 1983 credit application, John J. Mayer & Associates financial statement and John J. Mayer & Associates Dun & Bradstreet reports

> was received by [Televideo] after the date the [C]ontract was entered into— August 19, 1983. The credit application is dated August 24, 1983. The financial statement is accompanied by a cover letter dated August 22, 1983 ... and the Dun and Bradstreet report is dated September 9, 1983. Even assuming that these documents constitute representations by John J Mayer to [Televideo], [Televideo] could not have relied on them in making its decision to extend credit to John J. Mayer & Associates.

reviewed after execution of the Contract, but "before any merchandise was to be shipped." Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment, ("Pl. Mem.Opp."), at 1. This purported fact, however, is set forth in counsel's Memorandum of Law and is not presented in proper evidentiary form. As such it is without any indicia of authenticity or guaranty of trustworthiness, particularly in light of counsel's paucity of candor with the Court, and the Court shall disregard it. (Contrary to the statement in Televideo's Memorandum of Law, Mark Goldman, Esq., an attor-

ney associated with the Teitelbaum firm, continues to insist that Televideo "entered into [the Contract] only after checking into the financial background of [Mayer–New York].... Plaintiff relied on the [Dun & Bradstreet] which stated that the JOHN J. MAYER & ASSOCIATES Televideo would be dealing with was a branch of JOHN J. MAYER & ASSOCIATES located in New York, a business whose assets were valued at over $1,000,000.00 in 1983." Affidavit of Mark L. Goldman in Opposition to Motion for the Imposition of Sanctions, sworn to on March 11, 1991 ("Goldman Aff."), at 5.)

Slip Op. at 4–5. The Court then certified the case trial-ready. Teitelbaum filed a trial memorandum of law dated January 5, 1989, and counsel signed and submitted to the Court a Joint Pre–Trial Order dated November 20, 1989. (Counsel for Mayer later submitted an Amended Joint Pre–Trial Order signed by neither party dated March 22, 1990, which was filed with the Court on March 26, 1990.)

Mark Goldman, Esq., an attorney associated with the Teitelbaum firm, purports to have spoken to Mr. Haller at or about the time the Joint Pre–Trial Order was filed. At that time, according to Goldman, "it was determined that [Haller] would definitely be available for trial." [5] Pl.Mem.Opp. at 5.

In mid–November 1990, the Court notified the parties that the case would be tried beginning on November 29, 1990. Televideo had by then, however, lost track of Mr. Haller and on that account failed to proceed to trial. By order dated December 5, 1990 this Court dismissed Televideo's complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure due to its failure to proceed to trial.[6]

Mayer now moves for sanctions against Televideo counsel pursuant to Rule 11 and Section 1927. He argues that Televideo's claims against him were entirely unsupported and that counsel prosecuted these claims "after it became abundantly clear that [the case] would surely fail." Memorandum of Law In Support Of Defendant John. J. Mayer's Motion For The Imposition Of Sanctions ("Mayer Mem."), at 2. Mayer also urges the Court to impose Rule 11 sanctions because of numerous false statements in the papers Televideo counsel submitted to the Court and because counsel failed sufficiently to investigate the factual and legal basis of Televideo's claims.

Teitelbaum opposes the motion, contending that Televideo was justified in com-

mencing this action. Teitelbaum argues that if the Court found Mayer–New York and Mayer–Hawaii to be partners, New York Partnership Law § 26 would require the Court to find Mayer–New York jointly liable for Mayer–Hawaii's debts, supporting Televideo's claim that Mayer was liable on the Contract as the sole owner of Mayer–New York. Teitelbaum also argues that the financial data Mayer–Hawaii submitted to Televideo, particularly the Dun and Bradstreet reports, credit application and financial statement, support its belief that Mayer–Hawaii and Mayer–New York are partners.

## DISCUSSION

### I. RULE 11 SANCTIONS

Rule 11 states in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. . . . The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses in-

---

**5.** In using the passive construction in drafting this phrase, counsel obfuscates whether Haller or Goldman made this determination, and, if made by Goldman, whether it was made upon a direct representation from Haller.

**6.** Teitelbaum erroneously claims that it voluntarily withdrew the underlying suit. The

Court's December 5, 1990 Order of Dismissal ("Order") indicates that the Court dismissed the underlying action due to "plaintiff having represented to the Court that it would be unable to proceed to trial . . . due to plaintiff's inability to produce its witnesses for trial." Order at 1.

curred because of he filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

■ The purpose of Rule 11 is to streamline litigation in the federal courts by thwarting the use of frivolous and abusive trial tactics. *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21–22 (2d Cir.1990). To this end Rule 11 charges an attorney commencing an action with three points of inquiry: (i) reading a document, (ii) investigating its factual basis, and (iii) researching the applicable case law. A Court may sanction an attorney whenever his or her actions unreasonably increase either the duration or cost of litigation. *See* Fed.R.Civ.P. 11. "Rule 11 does not impose a continuing duty to correct or withdraw an earlier pleading, motion or other paper." *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir.1986). The Court must assess each attorney's behavior objectively, without hindsight, and scrutinize each individual case before considering imposition of sanctions. *Id.* at 1274–75.

The requirement that a lawyer read all he or she signs is self-explanatory and there is no allegation that Teitelbaum failed to satisfy its obligation to review the pleadings and other materials submitted to the Court.

■ There is no absolute definition of a "reasonable inquiry" into the factual sufficiency of a claim, but the Court will appraise an attorney's efforts according to how much time the attorney had for the investigation and the feasibility of publicly verifying the facts. *Nassau–Suffolk Ice Cream, Inc.*, 118 F.R.D. at 48. Other elements a court should consider include the complexity of the factual issues, *Pensiero v. Lingle*, 847 F.2d 90, 95 (3d Cir.1988), and the need for additional discovery to develop a factual claim. *See Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F.Supp. 669 (N.D.N.Y.1989).

■ When a lawyer must rely on the client's factual allegations because the lawyer is unable to publicly verify them, the attorney must assess the validity of the client's information. The attorney must ask if the client's knowledge is direct or hearsay, and consider whether the client's version of the facts is plausible. *See Nassau–Suffolk Ice Cream, Inc.*, 118 F.R.D. at 48. This inquiry need not be exhaustive, merely reasonable. *Id.*

■ The Court may not sanction all actions of which it disapproves lest it stifle creative and effective advocacy. *McMahon*, 896 F.2d at 22. Similarly, the Court may not sanction an attorney for bringing a suit which ultimately fails; it may do so only for bringing one without a scintilla of merit. *Monarch Ins. Co. v. Insurance Corp. of Ireland, Ltd.*, 110 F.R.D. 590, 595 (S.D.N.Y.1986). Thus, an attorney's Rule 11 obligations are satisfied when the attorney brings a claim which has a colorable legal basis for success or which reasonably extends precedent. *Oliveri*, 803 F.2d at 1275.

## A. *Teitelbaum's Rule 11 Inquiry*

### 1. Reasonable Investigation

■ An attorney's burden of investigating the factual basis of all claims it brings is not an onerous one. *See Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit, Co.*, 112 F.R.D. 664, 667–68 (S.D.N.Y.1986). In the instant case, the Court is satisfied that Teitelbaum satisfied its obligation to conduct a reasonable investigation of the factual basis of Televideo's claim.

Prior to commencing this action, Teitelbaum examined the financial documents Lawrence Mayer had submitted to Televideo. Teltelbaum also had knowledge of alleged telephone conversations between Televideo employees and Mayer. The documentary material Teitelbaum reviewed included a Dun & Bradstreet Credit Report and financial statement, both of which tended to indicate that the two entities, Mayer–Hawaii and Mayer–New York were closely affiliated. Although the financial documents Televideo claimed to have relied upon in doing business with Mayer–Hawaii were dated after the Contract had been entered into, the totality of facts available to Teitelbaum justified proceeding upon a

theory of partnership in fact requiring no proof of reliance. Accordingly, the Court finds that Teitelbaum satisfied its Rule 11 investigatory burden by reviewing and relying on the documents Mayer–Hawaii presented to it.

#### 2. Legal Basis for Claim

■ The record in this case indicates that Televideo's claim did not have a strong likelihood of success. The Court, however, is not persuaded that Televideo counsel pursued claims that were from the outset "without a scintilla of merit." *See Monarch Ins. Co.*, 110 F.R.D. at 593. When there is no written partnership agreement between putative partners, the Court must analyze the different facets of the parties' relationship to determine existence of a partnership in fact. *Brodsky v. Stadlen*, 138 A.D.2d 662, 663, 526 N.Y.S.2d 478, 479 (2d Dept.1988). Among the characteristics the Court may consider are (1) the intention of the parties, (2) the sharing of profits and losses, (3) joint management and control of the business, (4) compensation, (5) contributions of capital, and (6) ownership of partnership assets. *Id.* The party alleging a partnership bears the burden of proof on this issue. *See Blaustein v. Lazar, Borck & Mensch*, 161 A.D.2d 507, 508, 555 N.Y.S.2d 776, 777 (1st Dept.1990).

Although the evidence supporting these elements was not strong, Televideo counsel had sufficient facts before it to justify proceeding with this action against Mayer under the theory of partnership in fact. Televideo sought to recover from Mayer as a partner of "John J. Mayer & Associates," on the basis of various documents tending to indicate an affiliation between Mayer–New York and Mayer–Hawaii, Jack Mayer's position as president of Mayer–New York and portions of Jack Mayer's deposition testimony. The documents upon which Televideo bases its claim may ultimately have proved inadequate to persuade a trier of fact that a partnership existed between Mayer–New York (or Mayer) and Mayer–

Hawaii. Such evidence, however, when combined with Mr. Haller's anticipated testimony and Televideo's knowledge of Mayer's involvement in other of his son's business transactions, *see* Goldman Aff. at 10, supports the plausibility of Televideo's contention that Mayer–New York and Mayer–Hawaii were partners and provides a reasonable basis for initially proceeding against Mayer. As discussed above, counsel satisfies its Rule 11 burden if it can demonstrate a reasonable objective basis for believing that Televideo's claim had a colorable legal basis for success. *See Monarch Ins. Co.*, 110 F.R.D. at 593. The Court finds that at least at the outset of the action the record indicates that such a colorable legal basis existed.

■ Mayer also argues that Teitelbaum should be sanctioned for proceeding against Mayer personally on the theory of apparent authority. Because the Court finds that Televideo properly proceeded with its action based upon the theory of partnership in fact, the Court need not reach the issue of whether Televideo, consistent with Rule 11, urged an alternate theory for establishing an agency, i.e., that of apparent authority. Mayer contends, however, that if Televideo initially commenced the action consistent with Rule 11, there came a point at which it continued to prosecute the action in bad faith. He argues that after proffering to Televideo telephone records establishing that he never placed a phone call to Televideo, it was incumbent upon Televideo and its attorneys to obtain copies of its own telephone records to corroborate Haller's testimony that he had initiated such a call. Mayer contends that Televideo's purported inability to locate the relevant phone records[7] is inadequate justification for counsel's failure to review those records since telephone company copies should have been readily available.

Televideo and Teitelbaum acknowledge that subsequent to the Court's decision on the parties' summary judgment motions

---

7. Televideo has contended that its telephone records from the period in question had been discarded.

and prior to Teitelbaum's signing and submitting the parties' first Joint Pre–Trial Order, the central factual issue in the case was Haller's purported telephone conversation with Mayer, a conversation which Mayer vehemently denied and continues to deny. Mayer subsequently produced telephone records which presumptively established that he never placed such a call to Haller at Televideo's California offices. *See* DeOrchis Aff. at ¶ 21.

The Court holds that as a matter of law, Televideo was obligated under the circumstances, pursuant to Rule 11, to conduct a reasonable investigation of its own telephone records and undertake reasonable efforts to obtain copies of missing or otherwise unavailable records before submitting to the Court a Joint Pre–Trial Order certifying its readiness for trial. Such efforts could scarcely have been considered onerous in light of the obvious importance of resolving whether Haller had placed the disputed call. Against the case's evidentiary landscape, which then had as a prominent feature Haller's alleged conversation with Mayer, and considering Haller's subsequent departure from Televideo and Televideo's subsequent inability to locate Haller, Televideo's failure to produce or attempt to obtain copies of the relevant phone records is highly suspect.

It is unclear, however, how, if at all, this conduct impacted upon the litigation. Significantly, until Televideo's telephone records are produced, the Court cannot ascertain the effect of Televideo's failure to produce the requested records. Accordingly, the Court directs that Televideo and counsel produce the relevant phone records forthwith; Mayer is similarly directed to produce forthwith a documentation and analysis of legal fees incurred solely in connection with defending against Televideo's apparent authority claim subsequent to the Court's May 20, 1987 Memorandum Opinion and Order denying the parties' motions for summary judgment, including but not limited to attorney time records and invoices.

**B. *Teitelbaum's Misstatements of Fact***

Mayer also moves for the imposition of Rule 11 sanctions on the grounds that Televideo counsel misrepresented certain facts in its submissions to the Court. Specifically, Mayer asserts that Teitelbaum's erroneous statement that Televideo only agreed to do business with Mayer–Hawaii after it had received Mayer–Hawaii's financial documents constitutes an actionable breach of professional standards. *See* Goldman Aff. at 5–7. The Court agrees that Teitelbaum has indeed made several false statements of fact. Not only did Teitelbaum misidentify the date it signed the Contract and the date it received Mayer–Hawaii's financial data, Teitelbaum also falsely contended that it voluntarily discontinued Televideo's suit against Mayer. *See* Affidavit of Mark Goldman, sworn to on March 11, 1991, at 1, 10. In fact, the Court dismissed Televideo's action for failure to prosecute pursuant to Rule 41(b), and neither Televideo nor counsel ever effected such a "voluntary withdrawal." The Court finds these patently false characterizations of the facts highly unethical and inconsistent with the level of professional integrity required of counsel practicing before this Court.

The Court, however, is unable to find that Teitelbaum's behavior rises to the level of an actionable Rule 11 violation. Teitelbaum's statements were erroneous and evidently calculated to mislead the Court. They were, however, incidental to the contract dispute before the Court. The misstatements neither unduly prolonged the litigation, nor increased Mayer's cost of defending the action. As such, the misstatements, though an affront to the Court and reflective of Teitelbaum's paucity of candor, are not actionable under Rule 11. *See Eastway Construction Corp. v. New York*, 762 F.2d 243, 254 (2d Cir.1985).

**II. SANCTIONS UNDER SECTION 1927**

Mayer also moves for the imposition of sanctions against Teitelbaum pursuant to Section 1927 on the grounds that Teitelbaum behaved unreasonably and vexatiously in the underlying suit. Teitelbaum con-

**50**

tends that, as with Rule 11 sanctions, Section 1927 sanctions are unwarranted where the attorney had a colorable reason for bringing a claim. For reasons substantially similar to those indicated above in connection with the Court's discussion of Mayer's Rule 11 claim, the Court denies Mayer's Section 1927 [8] claim except to the extent that review of the records and attorney time analysis requested by the Court warrants further consideration of this issue.

### CONCLUSION

Defendants motion for the imposition of sanctions against the law firm of Teitelbaum, Braverman & Borges, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927, is denied subject to the Court's review of the materials counsel have been directed to produce forthwith.

SO ORDERED.

---

**8.** Section 1927 provides:

An attorney or any other person admitted to conduct cases in any Court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred by such conduct.

28 U.S.C. § 1927.