Adam **HERMAN**, Dionne **Durosaro–Kelson, Michelle Fitzpatrick, Shawn Davila, Kellee Anthony, Kenya Newell, Paulette Ruiz, Lashawnda Bonner, Ashirea Moore, and Fannie Smith, Plaintiffs,**

v.

**BLOCKBUSTER ENTERTAINMENT GROUP, and Viacom International, Inc., Defendants.**

No. 97 Civ. 1562(MJL).

United States District Court, S.D. New York.

Aug. 25, 1998.

---

Cheven, Keely & Hatzis, New York City by Joseph D. Nohavicka, Daniel J. Tucker, for Plaintiffs.

Cozen and O'Connor, Philadelphia, PA by Jeffrey I. Pasek, Anita B. Weinstein, for Defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before the Court is the motion for summary judgment of Defendants Blockbuster Entertainment Group ("Blockbuster") and Viacom International, Inc. ("Viacom") (collectively the "Defendants") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court hereby grants summary judgment in favor of Defendants.

## BACKGROUND

Plaintiffs Adam Herman, Dionne Durosaro–Kelson, Michelle Fitzpatrick, Shawn Davila, Kellee Anthony, Kenya Newell, Paulette Ruiz, Lashawnda Bonner, Ashirea Moore, and Fannie Smith ("Plaintiffs") commenced this action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the New York Human Rights Law § 290, et seq. Plaintiffs are all former employees of Discovery Zone,[1] a chain of children's indoor recreational facilities with approximately 300 outlets in the United States and Europe. Blockbuster owns 49.9 percent of Discovery Zone's common stock. As of September 29, 1994, Blockbuster is a wholly-owned subsidiary of Viacom.

In June 1997, Defendants sought leave to move to dismiss this action, claiming they could not be held liable as Plaintiffs' "employers" under either Title VII or the New York Human Rights Law. The Court, finding discovery on this issue necessary, denied Defendants' request and ordered discovery on the limited issue of whether the management and operations at Blockbuster and Discovery Zone were sufficiently integrated to hold Blockbuster liable under Title VII for the alleged discriminatory acts at Discovery Zone's stores. After the parties completed this limited discovery, Defendants filed the instant motion on the integrated enterprise issue.

---

**1.** At the time Plaintiffs commenced this action, Discovery Zone was in bankruptcy proceedings. Plaintiffs subsequently filed a separate action against Discovery Zone.

Plaintiffs, one male and nine females, were all hired by Discovery Zone between December 1994 and August 1995. Each worked at a New York area Discovery Zone location. The nine female plaintiffs allege that, during their employment in 1995, they each were subjected to sexual harassment and discrimination by male general managers at Discovery Zone. In July 1995, several of the plaintiffs reported the incidents to plaintiff Adam Herman ("Herman"), an assistant manager at Discovery Zone's Manhattan location. Herman allegedly reported these complaints to Laurie Fleurent ("Fleurent"), the director of Discovery Zone's Human Resources department. Herman claims that, at a subsequent meeting with various Discovery Zone management on August 11, 1995, he was effectively told to remain quiet if he wished to advance within the company. Herman resigned soon after the meeting. Herman and several other plaintiffs allege that they were constructively discharged in retaliation for reporting the discriminatory conduct.

On April 17, 1995, Viacom and Blockbuster entered into a Management Services Agreement ("MSA") with Discovery Zone whereby Blockbuster agreed to provide various management services to Discovery Zone. *See* Weinstein Aff., Ex. 5(MSA). The M.S.A. provides that "Blockbuster should take over the operational and administrative functions of [Discovery Zone] by providing certain management services for [Discovery Zone]." *See id.* at 1. The M.S.A. further provides that "Blockbuster shall provide the overall coordination and supervision of the business of [Discovery Zone] and its subsidiaries and shall direct and manage the day-to-day operations and business affairs of [Discovery Zone] and its subsidiaries." *See id.*

The M.S.A. lists specific services to be provided to Discovery Zone, including:

(iii) General financial, accounting and payroll services, including (A) general accounting (billing/invoicing, accounts payable services, accounts receivables management and collection services and maintenance of general ledgers), (B) cash management and banking services, (C) budget preparation and (D) accounting and financial services associated with the preparation and filing of reports to federal, state and local governmental organizations, including those associated with the preparation and filing of reports to the United States Securities and Exchange Commission (the "SEC"); ...

(vi) legal and tax services, including ... (B) the preparation and filing of, and assistance with respect to, tax returns and reports to the SEC and other governmental agencies ... and (D) the management of the defense or prosecution of litigation, and of other legal services furnished by outside counsel, and making recommendations with respect thereto; ...

(xi) human resource and personnel administration services, including (A) employee and labor relations, (B) compensation and benefits, (C) hiring, promoting, demoting, discharging and transferring employees and (D) providing incentive and severance packages to employees ...

*See id.* at 2–3. Discovery Zone was to "reimburse Blockbuster for the costs and expenses incurred in its provision of management service to [Discovery Zone]." *See id.* at 1; *see also id.* at 5–6 ("Compensation for Services").

During the limited discovery period, Plaintiffs deposed Al Detz ("Detz"), the former Chief Financial Officer of Blockbuster, and Johnny Taylor ("Taylor"), former in-house counsel at Blockbuster. Detz testified that Blockbuster provided certain services to Discovery Zone under the M.S.A. as a cost-cutting measure. *See* Detz Tr. at 26. For each service contemplated under the MSA, Discovery Zone performed a cost analysis to determine if Blockbuster could provide the service cheaper. *See id.* at 26, 96–97. Pursuant to the MSA, Blockbuster actually provided the following services to Discovery Zone: payroll processing, tax return preparation, insurance claim processing, computer operation work, and certain legal services. *See id.* at 25–26, 33–34.

In addition to the services provided, Detz served as interim CFO at Discovery Zone from June 1995 until the Spring of 1996. *See id.* at 54–55. Steve Berrard, the Chief Executive Officer of Blockbuster, served as interim CEO at Discovery Zone during the same period. *See id.* Blockbuster also trans-

ferred approximately 30–70 financial accounting personnel to Discovery Zone after the M.S.A. was signed. *See id.* at 15–16.

## DISCUSSION

### I. *Legal Standards Under Rule 56*

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] Fed. R.Civ.P. 56(c). Furthermore, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). Rather, to defeat a motion for summary judgment, the opposing party must produce "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

### II. *Blockbuster's Status as Employer Under Title VII*

Title VII prohibits discriminatory employment practices by "employers" as defined in 42 U.S.C. § 2000e.[3] It is undisputed that Plaintiffs were all employed by Discovery Zone. Thus, for Plaintiffs' claims to survive, they must establish that Blockbuster and Discovery Zone constituted a single employer for purposes of Title VII protection.

As a general matter, "a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir.1996) (citing *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 & n. 2 (10th Cir. 1993)). Similarly, "the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Id.* (citing *Frank,* 3 F.3d at 1362); *see also Balut v. Loral Electronic Systems,* 988 F.Supp. 339, 344 (S.D.N.Y.1997). Thus, "the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Armbruster v. Quinn,* 711 F.2d 1332, 1337 (6th Cir.1983).

### A. *The Four–Part Single Employer Liability Test*

In *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam), the Supreme Court approved a four-

---

2. Local Civil Rule 56.1 requires a party moving for summary judgment to annex a statement of material facts to which the party contends there is no genuine issue to be tried. *See* S.D.N.Y. Local Civ. R. 56.1(a). In support of their motion, Defendants submitted a Rule 56.1 Statement that merely states a few legal conclusions. Defendants also annexed a document entitled "Motion for Summary Judgment" in which they aver facts which they contend are not in dispute. It appears as though Defendants equate their document entitled "Motion for Summary Judgment" with the Local Rule 56.1(a) requirement,

and the Court will treat it as such. The Court also notes that Plaintiffs treated Defendants' "Motion for Summary Judgment" as a Rule 56.1 Statement and responded to it in compliance with Local Rule 56.1(b). *See* Pls.' "Response to Defendants–Movant's Motion For Summary Judgment", at 1 n. 1.

3. The statute defines "employer" as "a person engaged in an industry affecting commerce, who has fifteen or more employees for each working day." 42 U.S.C. § 2000e(b).

part test established by the National Labor Relations Board for determining whether two entities constitute a single entity in the context of labor disputes. The Second Circuit, following the trend of the Fifth, Sixth, and Eighth Circuits, has adopted the four-part test for determining when two entities are sufficiently interrelated for an employee to hold both entities liable under Title VII. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995). Under this test, " '[a] parent and subsidiary cannot be found to represent a single, integrated enterprise in the absence of evidence of (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.' " *Cook*, 69 F.3d at 1240 (quoting *Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir.1994)).

■ In assessing these factors in Title VII actions, courts should focus their analysis on the second factor: centralized control of labor relations. *See Cook*, 69 F.3d at 1241 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)); *see also Armbruster*, 711 F.2d at 1336. The critical question to be answered is: " 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?' " *Cook*, 69 F.3d at 1240 (quoting *Trevino*, 701 F.2d at 404); *see also Frank*, 3 F.3d at 1362. Thus, the Court will assess each of the four factors in turn, with particular focus on the second factor.

### 1. *The Interrelation of Operations*

The Fifth Circuit recently set forth various criteria for determining whether a sufficient interrelation of operations exists: (1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records, and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns.

*See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir.1997); *see also Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981–82 (4th Cir.1987) (examining similar factors to those in *Lusk*). In assessing whether the parent might "so dominate the subsidiary's operations," the *Johnson* court stated that "the subsidiary might be highly integrated with the parent's business operations, as evidenced by the commingling of funds and assets, the use of the same work force and business offices for both corporations, and the severe undercapitalization of the subsidiary." 814 F.2d at 981; *see also Dewey v. PTT Telecom Netherlands, U.S., Inc.*, No. 94 Civ. 5983, 1995 WL 425005, at *3 (S.D.N.Y. July 19, 1995) (stating that "courts look to factors such as common offices, long distance shipping, bank accounts, payroll, and shared facilities rather than to an overlap of personnel as an indicia of integration" under the interrelated operations factor), *aff'd* 101 F.3d 1392, 1996 WL 364531 (2d Cir.1996) (citations omitted).

Blockbuster provided the following limited services to Discovery Zone pursuant to the MSA: payroll processing, insurance claim processing, preparation of tax returns, and computer operation work. *See* Detz Tr. at 25–26. In addition, after the M.S.A. was signed, approximately 30–70 financial accounting people transferred from Blockbuster to Discovery Zone. *See id.* at 15–16. Finally, although the assets and liabilities of the two companies were separate, *see* Detz Tr. at 20, Blockbuster guaranteed one bridge loan for Discovery Zone, *see id.* at 24.

The Court finds this limited interrelationship insufficient to support a finding of interrelated operations. Most significant operations at the two corporations were separate and distinct. First, the two entities shared no common office space. *Cf. Duffy v. Drake Beam Morin, Harcourt General, Inc.*, 96 Civ. 5606, 1998 WL 252063, at *4 (S.D.N.Y. May 19, 1998) (citing common office space as factor in finding interrelation of operations); *Perry v. Manocherian*, 675 F.Supp. 1417, 1426 (S.D.N.Y.1987) (finding interrelatedness based, in part, on common headquarters); *with Balut v. Loral Electronic Systems*, 988 F.Supp. 339, 346 (S.D.N.Y.1997) (finding no

interrelation of operations based, in part, on lack of common office space). In fact, Blockbuster and Discovery Zone were structured by different geographical regions and zones with separate regional offices. *See* Taylor Tr. at 47–48; Detz Tr. at 128–29. Second, the two entities maintained separate bank accounts and separate payroll accounts. *See* Detz Tr. at 125. Discovery Zone also handled its own cash management and accounts payable invoices. *See* Detz Tr. at 99–100, 120–21. Third, Discovery Zone prepared its own financial statements,[4] budgets and forecasts, and maintained its own accounting records. *See* Detz Tr. at 120–22. In addition, Discovery Zone handled its own advertising and marketing. *See* Detz Tr. at 122–23; *cf. Perry*, 675 F.Supp. at 1426 (noting interrelated advertising of two entities).

Nor does the one-time transfer of employees from Blockbuster to Discovery Zone support a finding of integrated operations. Detz testified that after the transfer, the employees were entirely dedicated to Discovery Zone and no longer affiliated with Blockbuster. *See* Detz Tr. at 126. There is no evidence that employees otherwise rotated between the two companies. *Cf. Regan v. In the Heat of the Nite, Inc.*, 93 Civ. 862, 1995 WL 413249, at *3 (S.D.N.Y. July 12, 1995) (finding interrelated operations where employees at related establishments rotated informally among the establishments and employee records for all establishments maintained at same headquarters); *Perry*, 675 F.Supp. at 1426 (finding interrelation where "employees who were in theory hired to work for one of the entities have in practice been used to do work for the other."); *with Balut*, 988 F.Supp. at 346 (finding no interrelation where employees were transferred among subsidiaries annually, but not on a day-to-day basis).

Although Plaintiffs point to the language of the M.S.A. to establish Blockbuster's theoretical control over Discovery Zone's operations, Plaintiffs put forth no evidence to contradict Detz's testimony that most operations remained separate and distinct in practice. Moreover, Discovery Zone paid for the limited services that Blockbuster provided under the M.S.A. in the same manner as if Discovery Zone had hired an outside accounting service. *See* Weinstein Aff., Ex. 5(MSA) at 10 (Discovery Zone retained Blockbuster "to act solely as management service provider" and "[i]n such capacity, Blockbuster shall act as an independent contractor."). Blockbuster billed Discovery Zone for each service provided.[5] *See* Detz Tr. at 22–23. Thus, the two companies did not share those limited services as if operating as one entity.

Plaintiffs rely on *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983), and *E.E.O.C. v. Dolphin Cruise Line, Inc.*, 945 F.Supp. 1550 (S.D.Fla.1996), to support a finding of interrelated operations. Both cases, however, present substantially greater facts evidencing such an interrelationship. *Armbruster*, unlike our case, involved a parent company and its wholly-owned subsidiary. 711 F.2d at 1338. In addition to handling the subsidiary's payroll accounting and receiving periodic financial reports from the subsidiary, the parent in *Armbruster* handled the subsidiary's cash accounting and accounts receivable, provided administrative backup, monitored all of the subsidiary's sales shipments, negotiated and closed the purchase of the subsidiary's office building, and approved the subsidiary's office remodeling. *See id.* Moreover, the subsidiary's bank accounts were located at the parent's headquarters, and the subsidiary's management used the parent's credit cards and corporate aircraft. *See id.*

---

**4.** Blockbuster did include Discovery Zone's financial statements with its own financial statements. *See* Detz Tr. at 20–21. However, accounting requirements mandated such treatment based upon the extent of Blockbuster's ownership interest. *See id.* at 21. This does not support a finding of integrated operations.

**5.** At times Discovery Zone consulted counsel from Blockbuster's legal department under this

same billing method pursuant to the MSA. *See* Detz Tr. at 33. Each company, however, maintained its own legal department at separate locations. *See* Taylor Tr. at 13; *cf. Kelber v. Forest Elec. Corp.*, 799 F.Supp. 326, 331 n. 4 (S.D.N.Y. 1992) (finding insufficient interrelations between related companies despite evidence that the two companies shared a legal department).

In *Dolphin Cruise*, the two related companies shared offices, used logos and letterhead interchangeably, advertised jointly, issued checks on each other's behalf, shared accounting services and bank accounts, and maintained personnel and other business records at the same office. *See* 945 F.Supp. at 1553–54. In addition, one entity prepared the other's tax returns, budgets, and annual statements. *See id.* at 1554. Thus, the findings of interrelated operations in both *Armbruster* and *Dolphin Cruise* rested upon substantially greater facts than Plaintiffs present. Although Plaintiffs point to the M.S.A. to suggest that similar operations were shared between Blockbuster and Discovery Zone, Plaintiffs' lack of evidence that such services were actually shared precludes a finding of interrelated operations.

## 2. *Centralized Control of Labor Relations*

■ To establish centralized control over labor relations, Plaintiffs need not demonstrate Blockbuster's total control or ultimate authority over Discovery Zone's hiring decisions. *See Cook*, 69 F.3d at 1241. Rather, control over labor relations may be established "by a showing ... of participation [that] is sufficient and necessary to the total employment process." *Cook*, 69 F.3d at 1241 (quoting *Armbruster*, 711 F.2d at 1338). In making this assessment, the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation and determine, " '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?' " *Cook*, 69 F.3d at 1240 (quoting *Trevino*, 701 F.2d at 404); *see also Frank*, 3 F.3d at 1363; *Balut*, 988 F.Supp. at 344.

In *Cook*, the Second Circuit found the requisite degree of control over labor relations. The parent in *Cook* reviewed applications for employment at the subsidiary, approved personnel status reports, and approved all major employment decisions for the subsidiary. *See Cook*, 69 F.3d at 1241. Additionally, the plaintiff was hired to work at the subsidiary

by the vice-president of Human Resources at the parent and was fired at the direction of an employee of the parent. *See id.*

None of the facts relied upon in *Cook* are present here. To establish centralized control, Plaintiffs once again rely on the language of the MSA.[6] Indeed, under the MSA, Blockbuster agreed to provide "human resource and personnel administration services, including (A) employee and labor relations, (B) compensation and benefits, (C) hiring, promoting, demoting, discharging and transferring employees and (D) providing incentive and severance packages to employees." Weinstein Aff., Ex. 5 at 3. However, aside from the one-time transfer of employees from Blockbuster to Discovery Zone, Plaintiffs offer little, if any, evidence that Blockbuster actually participated in Discovery Zone's labor relations or employment decisions.

To the contrary, the evidence demonstrates that Blockbuster never provided the human resource and personnel services contemplated in the MSA. First, Discovery Zone had its own human resources department. *See* Detz Tr. at 50–51. Laurie Fleurent, a Discovery Zone employee, was director of Discovery Zone's human resources department and in charge of the day-to-day decisions on Discovery Zone personnel. *See* Taylor Tr. at 18. There is no evidence that Fleurent reported to Blockbuster management or otherwise sought Blockbuster's approval for any personnel decisions. Detz testified that "all of the employee and labor relations were handled by Discovery Zone personnel ... there was no need for Blockbuster to provide that service on behalf of Discovery Zone." Detz Tr. at 50–51; *see also id.* at 98–99. Discovery Zone also had its own hiring policy. *See* Detz Tr. at 47. Finally, although not a significant factor, there is no evidence that Discovery Zone employees participated in the same benefit or pension plans as Blockbuster employees. Thus, as a general matter, Blockbuster did not control or participate in Discovery Zone's labor relations. *See Duffy*, 1998 WL 252063,

---

**6.** As for any discriminatory conduct alleged to have occurred before April 17, 1995, the date of the MSA, Plaintiffs offer absolutely no evidence of any interrelationship of operations or centralized control of labor relations between the companies.

at \*4 (holding parent not liable for alleged discriminatory conduct of wholly-owned subsidiary where it was uncontroverted that plaintiffs worked for subsidiary and each was supervised by a subsidiary employee, and that subsidiary maintained separate human resources department, established own policies, and made own decisions as to hiring, discipline, and termination of employees).

More significantly, Plaintiffs offer no evidence that Blockbuster played any role in the employment decisions and alleged discriminatory conduct particularly affecting them. The Amended Complaint alleges that each Plaintiff was hired by Discovery Zone. In fact, three of the Plaintiffs, Paulette Ruiz, Ashirea Moore, and Fannie Smith, were hired directly by Discovery Zone in August 1995, several months after the M.S.A. was signed. Each female plaintiff alleges that she was sexually harassed by a supervisor at her respective Discovery Zone location. The supervisors were all Discovery Zone general managers. In addition, the complaints of harassment were reported to and dealt with by Discovery Zone management. There is no evidence that any Blockbuster employee played a role in handling the complaints internally.[7] *See Duffy*, 1998 WL 252063, at \*5 (finding no centralized control where, despite fact that parent generally required subsidiary "to obtain its approval before making significant changes in operations, there is no evidence that such approval was either sought or obtained with respect to any of [subsidiary's] actions at issue."); *Balut*, 988 F.Supp. at 346 (finding plaintiff failed to demonstrate that parent company "hired, transferred, reviewed or fired him" despite

fact that parent's former president interviewed and hired plaintiff to work at subsidiary, subsidiary notified parent of its employment decisions, and parent assisted plaintiff in locating other employment within company); *Dewey*, 1995 WL 425005, at \*2 (finding subsidiary's immediate notification to parent of its hiring and firing decisions insufficient to demonstrate that parent exercised control over subsidiary's employment decisions); *cf. Dortz v. City of New York*, 904 F.Supp. 127, 145 (S.D.N.Y.1995) (finding centralized control where employees of parent served as plaintiff's direct superiors, determined the condition of plaintiff's employment, evaluated her annual performance, and had power to affect her promotions).

### 3. *Common Management*

■ It is undisputed that, from June 1995 to Spring 1996, Steve Berrard and Al Detz acted as CEO and CFO, respectively, of both Blockbuster and Discovery Zone. In addition, Sumner Redstone, the CEO of Viacom, served on Discovery Zone's Board of Directors. As a general matter, the Court must consider evidence of common management "in the light of the well established principle that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Lusk*, 129 F.3d at 779 (citation omitted).

The fact that two of Blockbuster's upper management served similar roles at Discovery Zone does not establish that Blockbuster exercised control over the operations and employment practices at Discovery Zone.

---

**7.** Plaintiffs' lone allegation of involvement by a Blockbuster employee concerns statements made by Taylor, Blockbuster's in-house counsel, to Plaintiffs' counsel regarding the sexual harassment claims. In short, Plaintiffs' counsel sent letters to Discovery Zone in late August 1995, and to Blockbuster and Viacom in early September 1995, alleging that Plaintiffs were victims of sexual harassment by Discovery Zone managers. *See* Keely Aff., ¶¶ 3, 4. In a subsequent telephone call, Plaintiffs' counsel told Taylor that he was inquiring whether the companies "had a policy of pre-suit negotiation and settlement." *See id.* at ¶ 8. Taylor proceeded to investigate the claims. Plaintiffs' counsel attests that Taylor subsequently called and told him that "he had

completed his investigation of the allegations" and "had determined that no illegal sexual harassment had taken place at Discovery Zone." Flamhaft Aff., ¶¶ 4–5.

The Court does not consider Taylor's investigation and representations to opposing counsel, in response to threats of litigation and pre-suit settlement overtures, to constitute participation by Blockbuster in the alleged discriminatory employment practices at Discovery Zone or an exercise of control over Discovery Zone's labor relations. Plaintiffs do not allege that Taylor sexually harassed any of the Plaintiffs or that he played a role in any decision affecting Plaintiffs' employment.

*See Kelber,* 799 F.Supp. at 331 (finding no integration between related entities even though certain high level management employees performed functions for both companies). There is no evidence that either Berrard or Detz wore the two companies' hats interchangeably during the limited period of their dual service. The two entities maintained distinct management structures. *See* Taylor Tr. at 47. Detz testified that Berrard, in his capacity as CEO of Discovery Zone, had minimal interaction with Discovery Zone's human resources department. *See* Detz Tr. at 85–86. Rather, Donna Moore, the Chief Operating Officer of Discovery Zone, had a direct daily working relationship with the human resources department. *See* Detz Tr. at 86. Moore had no contact with Blockbuster's COO. *See* Detz Tr. at 87–88; Taylor Tr. at 47.

Given the limited number of dual officers, the interim basis upon which they served at Discovery Zone, and the lack of evidence that those officers participated in any respect in the employment decisions affecting Plaintiffs, the Court finds Plaintiffs' evidence of common management insufficient for a finding of an integrated enterprise.

#### 4. *Common Ownership*

 Discovery Zone is not wholly owned by Blockbuster. Rather, Blockbuster owns 49.9% of Discovery Zone's stock. "Ownership of a controlling interest in a corporation entitles the controlling stockholder to exercise the normal incidents of stock ownership, such as the right to choose directors and set general policies, without forfeiting the protection of limited liability." *Baker v. Raymond Int'l, Inc.,* 656 F.2d 173, 180 (5th Cir. 1981). Thus, in the absence of any participation by Blockbuster in Discovery Zone's employment and labor decisions, its status as a major shareholder in Discovery Zone is insufficient to consider the two entities an integrated enterprise. *See Triche v. Crescent Turnkey & Engineering, L.L.C.,* No. Civ. A. 97–2657, 1998 WL 139986, at *4 (E.D.La. March 25, 1998) (holding that defendant company's forty percent ownership of employer company could not support finding of single employer where plaintiff failed

to present evidence that defendant company had any control over employer company's employment decisions); *Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 600 (E.D.N.Y. 1995) (dismissing Title VII claim where plaintiff failed to demonstrate that major stockholder significantly affected his employment or engaged in any discriminatory conduct); *Kellett v. Glaxo Enterprises, Inc.,* 91 Civ. 6237, 1994 WL 669975, at *5 (S.D.N.Y. Nov.30, 1994) (stating that "[c]ases ... have established that common ownership of entities is, by itself, essentially irrelevant").

Thus, despite the egregiousness of the alleged discriminatory acts at Discovery Zone, the Court finds that Blockbuster played no part in the discriminatory conduct, and that Blockbuster is not sufficiently interrelated with Discovery Zone to be held liable for that conduct as Plaintiffs' employer under Title VII.

### III. *Blockbuster's Status as Employer Under the New York Human Rights Law*

 In determining whether a defendant can be held liable as a plaintiff's employer under the New York Human Rights Law ("NYHRL"), courts consider the following elements: (1) whether the proposed employer had the power of the selection and engagement of the employee; (2) whether the proposed employer made the payment of salary or wages to the employee; (3) whether the proposed employer had the power of dismissal over the employee; and (4) whether the proposed employer had the power to control the employee's conduct. *See Robins v. Max Mara, U.S.A., Inc.,* 923 F.Supp. 460, 470 (S.D.N.Y.1996); *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737, 746 (S.D.N.Y. 1993). Further, "[t]he most important consideration in this analysis is '[w]hether the alleged employer exercised control over the employee's conduct and the incidents of his employment.'" *Robins,* 923 F.Supp. at 470 (quoting *Alie v. NYNEX Corp.,* 158 F.R.D. 239, 246 (E.D.N.Y.1994)); *see also Pampillonia v. RJR Nabisco, Inc.,* 138 F.3d 459, 461 (2d Cir.1998); *Dortz v. City of New York,* 904 F.Supp. 127, 147 n. 8 (S.D.N.Y.1995).

For the reasons discussed in Section II, *supra,* the Court finds that Plaintiffs' claims

against Blockbuster and Viacom fail under the NYHRL as well. Plaintiffs have failed to present evidence that Blockbuster or Viacom exercised control over Plaintiffs' conduct the incidents of their employment in any respect. In addition, although Blockbuster processed Discovery Zone's payroll, Discovery Zone's funds were maintained in its own bank and payroll accounts. Thus, Discovery Zone paid its employees' wages. Accordingly, the Court grants Defendants summary judgment on the state statutory claims.

### IV. Blockbuster Cannot Be Held Liable as Partner of Discovery Zone

In opposition to Defendants' motion, Plaintiffs argue that Blockbuster can be held liable for the alleged discriminatory acts of Discovery Zone under partnership principles. In their Amended Complaint, however, Plaintiffs did not assert claims based upon partnership law or principles. Even if Plaintiffs had asserted such claims, the Court finds this argument meritless.

The existence of a partnership depends upon " 'the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill or knowledge.' " *Bickhardt v. Ratner*, 871 F.Supp. 613, 620 (S.D.N.Y.1994) (quoting *Ramirez v. Goldberg*, 82 A.D.2d 850, 439 N.Y.S.2d 959, 961 (2d Dept.1981)); *see also Televideo Systems, Inc. v. Mayer*, 139 F.R.D. 42, 48 (S.D.N.Y.1991) (examining various aspects of relationship to determine existence of partnership in absence of written agreement) (citing *Brodsky v. Stadlen*, 138 A.D.2d 662, 526 N.Y.S.2d 478, 479 (2d Dept.1988)). Plaintiffs concede that there is no written or oral partnership agreement here, but rather rely on a partnership "by implication." *See* Pls.' Opp'n Mem. at 25–26. There is no evidence, either expressed or implied, that Blockbuster, Viacom, and Discovery Zone intended to create a partnership. Nor is there evidence that Discovery Zone shared in the profits or losses of either Blockbuster or Viacom. To the contrary, Blockbuster and Discovery Zone maintained separate bank accounts. Accordingly, the Court rejects Plaintiffs' eleventh-hour partnership theory.

### CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Defendants.

It is So Ordered.