Susan SHARPE, Plaintiff–Appellant,

v.

JEFFERSON DISTRIBUTING CO., Data Genesis Corporation, and Robert A. McMillan, Defendants–Appellees.

No. 97–1066.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1998.

Decided June 3, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 29, 1998.

---

Frederick S. Rhine (argued), Terence J. Moran, J. Eric VanderArend, Peter M. Katsaros, Gessler, Hughes & Socol, Chicago, IL, Jennifer L. Fischer, Chicago, IL, for Plaintiff–Appellant.

Michael J. Howlett, Jr., Allan T. Slagel (argued), Cary E. Donham, Shefsky & Froelich, Chicago, IL, William K. Blanchard, Evanston, IL, for Defendants–Appellees.

Before COFFEY, EASTERBROOK, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

During 1991 Susan Sharpe and Robert Moroney came up with an idea for computer software useful to insurers' marketing departments. Needing money to turn the idea into a working program, they went looking for a venture capitalist and found Robert McMillan, who committed $1 million to the project. McMillan became the sole share-holder of Data Genesis Corporation, which was formed to develop and sell the intellectual property. Data Genesis had a payroll of two: Sharpe and Moroney, each of whom expected to receive a salary plus 10% of Data Genesis's stock (after completion of the software and its profitable sale), to be followed by full control of the corporation once McMillan had recovered his investment. Moroney was to write the software, and Sharpe was to develop a clientele. Sharpe and Moroney set to work in Illinois; McMillan monitored progress and paid the bills from West Virginia, the headquarters of his principal enterprise, a beverage distributor called Jefferson Distributing Company. In April 1994 Data Genesis fired Sharpe. She says that McMillan demanded sexual rather than marketing services and cashiered her when she balked. The district court dismissed Sharpe's claim under Title VII of the Civil Rights Act of 1964 and sent the rest of the case to West Virginia in light of the forum-selection clause in the contract.

Title VII applies only to firms with more than 15 employees. 42 U.S.C. § 2000e(b); *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). Sharpe contends that Data Genesis (which had 2 employees) and Jefferson Distributing (which has considerably more than 13) should be treated as one entity. The parties made two assumptions in the district court that affect how this contention was resolved. The first is that the number of employees is a "jurisdictional" issue, which the district judge may decide under Fed.R.Civ.P. 12(b)(1) by receiving evidence and making findings. This assumption is incorrect. Sharpe presents a non-frivolous claim under federal law; no more is necessary for subject-matter jurisdiction. A plaintiff's inability to demonstrate that the defendant has 15 employees is just like any other failure to meet a statutory requirement. There is a gulf between defeat on the merits and a lack of jurisdiction. E.g., *Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, —— – ——, 118 S.Ct. 1003, 1009–12, 140 L.Ed.2d 210 (1998). So we held, for § 2000e(b) in particular, in *Ost v. West Suburban Travelers Limousine*,

*Inc.*, 88 F.3d 435, 438 n. 1 (7th Cir.1996). Surely the number of employees is not the sort of question a court (including appellate court) must raise on its own, which a "jurisdictional" characterization would entail. But Sharpe does not argue that the district judge erred in receiving evidence and drawing inferences under Rule 12(b)(1), so we approach the case as if she had agreed to a bench trial of this question. *Stewart v. RCA Corp.*, 790 F.2d 624, 629–31 (7th Cir.1986). The second assumption is that federal common law determines when two firms are treated as a single employer. Many a case applies to the employment-discrimination laws (Title VII, the ADA, the ADEA, and so on) the same approach the National Labor Relations Board uses to determine whether multiple corporate entities should be treated as one employer. See *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582–84 (7th Cir.1993). But an unresolved choice-of-law question lurks behind the NLRB cases, see *NLRB v. International Measurement and Control Co.*, 978 F.2d 334 (7th Cir.1992), and therefore behind the employment-discrimination cases too. Because the parties have not briefed this issue, and because a court of appeals need not explore choice-of-law matters unbidden, see *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 100 n. 5, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), we approach the case, as the parties do, on the assumption that a federal common law of employment relations supplies the rule of decision—but without foreclosing attention to this subject in the future.

■ When deciding that Data Genesis and Jefferson Distributing are not a single employer the district judge used a list of factors recapitulated in *Rogers*, 7 · F.3d at 582: whether the firms have closely related operations, common management, centralized control of labor relations, and common ownership. Some of these factors favor Sharpe, and some the defendants. On the one hand, McMillan owns the stock of both Jefferson Distributing and Data Genesis. The corporations mingled some of their operations, and McMillan treated both corporations' assets as his own. Sharpe's salary was paid from a Jefferson Distributing account, and McMillan sometimes used Jefferson Distributing sta-tionery to conduct Data Genesis business. During the four months between McMillan's initial investment and the formal contract between Sharpe and Data Genesis, she worked as a consultant to Jefferson Distributing. On the other hand, both the physical operations and the labor relations of the firms are distinct. Sharpe and Moroney developed a software business in Illinois, an activity unrelated to beverage distribution in West Virginia. The "labor relations" of Data Genesis consisted in the implementation of detailed contracts with two high-salaried white collar software developers, unlike the hourly, time-clock-punching labor engaged in West Virginia. Not for a second would the NLRB consider grouping Sharpe, Moroney, and the West Virginia workers in a bargaining unit! McMillan was the only member of the board common to the two firms; Sharpe and Moroney were on the Data Genesis board but not the Jefferson Distributing board. The day-to-day managers of the beverage operation had nothing to do with Data Genesis. Sharpe and Moroney were promised equity interests in Data Genesis, not in Jefferson Distributing.

■ *Rogers* explained that none of these factors is controlling. All should be considered, we wrote, in order to understand whether the corporations are "highly integrated with respect to ownership *and* operations". 7 F.3d at 583 (emphasis in original). An employer may not use multiple incorporations to put a single enterprise beyond the scope of Title VII, but neither Title VII nor any other federal law lumps together as one firm all businesses owned by a single person. So was the district judge, as trier of fact, obliged to conclude that McMillan tried to use multiple corporate shells to fracture a single business and avoid the operation of federal law? We don't think so. Jefferson Distributing was in existence before Sharpe and Moroney conceived their idea. Venture capitalists keep new projects separate from existing businesses, so that failure of one does not drag all down. If Sharpe and Moroney had found someone other than McMillan to underwrite their project, Data Genesis still would have been a two-person firm; it is adventitious that their sponsor had an op-

erating business rather than a portfolio of passive investments. The district judge concluded that Data Genesis and Jefferson Distributing, though joined at the ownership level, were distinct at the operations level. Given Sharpe's failure to contest the district judge's use of Rule 12(b)(1), appellate review is deferential. Characterizing a complex relation is "a creative rather than an exact endeavor". See *Chicago Professional Sports Limited Partnership v. National Basketball Ass'n*, 961 F.2d 667, 672 (7th Cir.1992). Because there is no right answer, we respect reasoned decisions by triers of fact. *Rogers*, 7 F.3d at 584 (reviewing a single-employer characterization for "clear error"). Cf. *Pullman–Standard v. Swint*, 456 U.S. 273, 285–90, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). The district court's decision that Sharpe was employed by Data Genesis, a two-employee corporation, is not clearly erroneous. Title VII therefore is inapplicable. But because all defendants are citizens of West Virginia—Data Genesis's operations take place in Illinois, but it is the state of incorporation and the location of the corporate headquarters that matter to corporate "citizenship", see *Kanzelberger v. Kanzelberger*, 782 F.2d 774 (7th Cir.1986)—the suit may continue under the diversity jurisdiction. The district judge held, however, that it must move to West Virginia.

Paragraph 13 of the contract between Sharpe and Data Genesis provides:

> This agreement supersedes any existing Agreement between Data and Employee and constitutes the entire agreement and understanding between the parties hereto.... This agreement shall be construed and interpreted in accordance with the laws of the State of West Virginia, excepting choice of law provisions, and any legal proceeding based on a dispute(s) arising hereunder will be maintained in the courts of West Virginia.

Despite this entire-agreement and choice-of-law language, Sharpe's initial complaint, filed in December 1994 against Jefferson Distributing and McMillan, sought relief under Illinois law based on various oral statements and understandings that preceded the written contract. The complaint included tort claims against McMillan for assault, battery, and intentional infliction of emotional distress. An amended complaint filed in February 1996 added Data Genesis as a defendant and presented new claims based on promissory estoppel and negligent infliction of emotional distress. A second amended complaint, filed in July 1996, demanded relief for breach of the written contract and alleged that the three defendants had committed fraud. On August 19, 1996, twenty months into the case, defendants argued for the first time that the contract's forum selection clause requires Sharpe to litigate in West Virginia. Despite this delay—and despite the fact that the answer to the first amended complaint conceded that venue is proper in the Northern District of Illinois—the district judge held that only West Virginia supplies a proper forum. The judge observed that Sharpe had not made a claim under the written contract until July 1996, and that the defendants invoked the forum-selection clause promptly thereafter.

■ Because Data Genesis did not become a party until February 1996, its delay in asserting the forum-selection clause was "only" seven months. Under Fed.R.Civ.P. 12(h)(1), however, that is too long: "A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Data Genesis's answer to the February 1996 complaint conceded venue, and no venue argument was included with motions made under Rule 12(g). Sharpe swiftly objected to defendants' invocation of the forum-selection clause; she has not forfeited the forfeiture defense under Rule 12(h)(1). Although a forum-selection clause differs in some respects from an argument that statutory venue does not lie in the district plaintiff has chosen (the former is a question of contract, the latter of statutory authorization), the two are sufficiently close—and the need for prompt determination of a suit's location sufficiently great—that we group forum-selec-

tion clauses with statutory venue issues for purposes of Rule 12(h (1). *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir.1995). That Sharpe first made a claim based on the written contract in July 1996 does not justify delay in invoking the forum-selection clause. Data Genesis immediately asserted the *first* sentence of ¶ 13, the entire-agreement clause, in response to the promissory estoppel and oral contract claims. If the first sentence of ¶ 13 was applicable in February 1996, so was the last. And if the last sentence of ¶ 13 was inapplicable in February on the ground that Sharpe's promissory estoppel and oral contract claims are not a "legal proceeding based on a dispute(s) *arising hereunder*" (that is, under the written contract), then it was equally inapplicable in August. What is more, it is impossible to see how delay in asserting the forum-selection clause may be excused on the ground that it governs only claims *expressly* based on the written contract, yet require the transfer to West Virginia of every claim in the case—oral and written contract, promissory estoppel, fraud, assault, battery, and infliction of emotional distress.

Sharpe made contract and quasi-contract claims against Data Genesis in February 1996. If the forum-selection clause was ever to be invoked, that was the time. Yet defendants then conceded that venue was proper in the Northern District of Illinois. Instead of derailing the case after discovery had proceeded for a year and a half and requiring everyone to start anew, the district court should have resolved the claim on the merits. The regrettable two-year delay cannot be undone, but the district judge should make amends by putting this case on the fast track to decision.

The judgment is affirmed to the extent it dismisses the claim based on Title VII but is otherwise vacated, and the case is remanded for decision on the merits.