Celia DA SILVA, Plaintiff,

v.

KINSHO INTERNATIONAL
CORPORATION and Haruo
Maruyama, Defendants.

No. 97 Civ. 5030(RMB).

United States District Court,
S.D. New York.

Jan. 4, 2000.

David Norton Mair, Kaiser Saurborn & Mair, P.C., New York City, for Celia Da Silva.

Jeffrey D. Buss, Smith, Buss & Jacobs, New york City, for Kinsho Intern. Corp., Harou Maruyama.

## DECISION AND ORDER

BERMAN, District Judge.

The Plaintiff in this action alleged that she was terminated from her (twelve year) employment with Defendants because she was not Japanese or of Japanese descent. Following a hearing on December 13, 1999, the Court determined that Defendant corporation was not an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 (because it had less than fifteen employees) and that it was appropriate for the Court to exercise supplemental jurisdiction over the remaining state law claims and try the case. This Decision and Order reflects and elaborates upon the Court's determinations.

### Background

Celia Da Silva ("Plaintiff") filed this action on July 9, 1997, against her former employer Kinsho International Corporation ("Kinsho Int'l") and its Treasurer, Haruo Maruyama ("Maruyama")(collectively, the "Defendants"), asserting claims of racial and national origin discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. L. § 296 ("HRL"); and Chapter I, Title 8 of the Administrative Code of the City of New York ("NYCHRL"). Plaintiff alleged that her employment was terminated by Defendants because she was not Japanese or of Japanese descent.[1] On February 17, 1998, Defendants filed a motion to dismiss "pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction." (Defendants' Memorandum of Law in Support of Motion dated February 17, 1998 at 1).

Title VII defines "employer" as an entity employing fifteen or more employees for at least twenty weeks. 42 U.S.C. § 2000e(b). Defendants asserted in their motion papers that Kinsho Int'l was not an employer under Title VII because it had less than fifteen employees. While conceding that Kinsho Int'l never employed fifteen or more people, Plaintiff argued that defendant Kinsho Int'l and its parent, Kinsho Mataichi Corp. ("Kinsho Mataichi"), constituted a "single employer" and, therefore, taken together, employed the requisite number of people under Title VII.

In a Memorandum Opinion and Order dated August 31, 1998 (the "Order"), after reviewing the appropriate test under *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir.1995) to determine single employer status, Judge Martin denied Defendants' motion to dismiss because he found there was "a factual dispute that must be resolved at trial."[2] (Order at 3). On De-

---

1. The case was originally assigned to United States District Judge John S. Martin.

2. In addition, pursuant to *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995), Judge Martin dismissed Plaintiff's Title VII claims against the individual defendant Haruo Maru-

yama. However, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), Judge Martin determined it was appropriate to exercise supplemental jurisdiction over Maruyama with re-

cember 12, 1998, the case was reassigned from Judge Martin to this Court and trial was scheduled to begin on December 13, 1999.

The parties agreed that the issue of whether Kinsho Int'l qualified as an "employer" under Title VII should be determined by the Court prior to trial. As a result, on the morning of December 13, 1999, the Court, sitting without a jury, held a hearing to resolve this issue. At the hearing, the Court heard testimony from the following witnesses: (i) Plaintiff Celia Da Silva; (ii) Kimie Ito, a former long-time employee of defendant Kinsho Int'l; (iii) Vern Lee Jarosak, an executive of defendant Kinsho Int'l; and (iv) individual defendant Haruo Maruyama. The Court also examined certain stipulations and exhibits submitted by the parties, as well as deposition testimony. At the conclusion of the hearing, the Court reserved judgment on the issue of whether defendant Kinsho Int'l was an "employer" under Title VII.

On the afternoon of December 13, 1999, the trial commenced. The parties completed jury selection and presented their opening statements to the jury that day. After excusing the jury, the Court ruled that defendant Kinsho Int'l and Kinsho Mataichi did not constitute a "single employer" and, therefore, that defendant Kinsho Int'l could not be considered an "employer" under Title VII. Accordingly, the Court dismissed the Plaintiff's Title VII claims against defendant Kinsho Int'l, and retained supplemental jurisdiction over

both Defendants with respect to Plaintiff's HRL and NYCHRL claims. Over the next day and a half, the trial was continued to its conclusion; the jury received the case and began deliberating on December 15, 1999.[3] Shortly thereafter, on December 16, 1999, the jury returned a unanimous verdict for Defendants.

The Court has refrained from entering a judgment on the verdict pending the instant ruling on the "jurisdictional" question.

**Discussion**

**Single Employer Status**

 "The law allows a corporation to organize so as to isolate liabilities among separate entities." *Murray v. Miner,* 74 F.3d 402, 404 (2d Cir.1996) (citation omitted). *See also Balut v. Loral Electronic Systems,* 988 F.Supp. 339, 344 (S.D.N.Y. 1997), *aff'd,* 166 F.3d 1199, 1998 WL 887194 (2d Cir.1998). Under the doctrine of limited liability, "a parent is liable for the acts of its subsidiary only under 'extraordinary circumstances.'" *Balut,* 988 F.Supp. at 344 (quoting *Murray,* 74 F.3d at 404). *See also Herman v. Blockbuster Entertainment Group,* 18 F.Supp.2d 304, 308 (S.D.N.Y.1998), *aff'd,* 182 F.3d 899, 1999 WL 385765 (2d Cir.1999), *cert. denied,* 528 U.S. 1020, 120 S.Ct. 529, 145 L.Ed.2d 409 (1999)("[a]s a general matter, 'a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances'") (citation omitted). Therefore, there is a "strong presumption that a parent is not the em-

---

spect to the HRL and NYCHRL claims. (*See* Order at 3–4).

**3.** After the jury began deliberating, but before a verdict was returned, the Court asked the parties, on the record, for additional briefing on the following question: is the issue of whether Kinsho Int'l had the requisite number of employees to qualify as an "employer" under Title VII "jurisdictional" in nature. The Court received Plaintiff's letter brief on December 21, 1999 and Defendants' letter brief on December 22, 1999. At a conference with the Court on December 27, 1999, the parties declined oral argument on this issue and elected to rely on their written submissions.

ployer of its subsidiary's employees." *Balut*, 988 F.Supp. at 344 (citation omitted)(emphasis added).

In *Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir.1994), *abrogated on other grounds by*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), the Court of Appeals for the Fifth Circuit held that:

> [A] parent and subsidiary cannot be found to represent a 'single, integrated enterprise' in the absence of evidence of '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'

*Id.* (citation omitted). This four-part test has also been adopted by the Sixth and Eighth Circuits. *See Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977). The Court of Appeals for the Second Circuit has stated:

> We believe that the appropriate test under Title VII for determining when parent companies may be considered employers of a subsidiary's employees is the four-part test adopted by the Fifth, Sixth, and Eighth circuits.

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995).

Courts applying this four-part test " 'have focused on the second factor: centralized control of labor relations.' " *Id.* at 1240 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)). This second factor has been distilled further to the following inquiry: " '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?' " *Cook*, 69 F.3d at 1240 (quoting *Trevino*, 701 F.2d at 404).

"[T]he Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation ..." *Herman*, 18 F.Supp.2d 304, 311 (S.D.N.Y.1998). In holding that plaintiff's former employer and its major shareholder did not constitute a single employer for Title VII purposes, the *Herman* court determined that "Plaintiffs offer no evidence that Blockbuster played any role in the employment decisions and alleged discriminatory conduct particularly effecting them." *Id.* at 312. *See also Duffy v. Drake Beam Morin, Harcourt General, Inc.*, 1998 WL 252063 at *5 (S.D.N.Y. May 19, 1998)(no centralized control over labor relations where, despite the fact that parent generally required its wholly-owned subsidiary "to obtain its approval before making significant changes in operations, there is no evidence that such approval was either sought or obtained with respect to any of [subsidiary's] actions at issue").

■ This Court agrees that a parent company should not lightly be held responsible for the acts of its subsidiaries absent proof that the parent was involved in the particular circumstances giving rise to the litigation. *See Herman*, 18 F.Supp.2d at 311; *Duffy*, 1998 WL 252063 at *5. Here, as previously noted by Judge Martin, there were conflicting assertions as to the parent's involvement in Plaintiff's termination from employment which gave rise to the need for a hearing. The determination of Kinsho Mataichi's "actual involvement in the particular circumstances giving rise to the litigation" turns largely on the weight of the evidence, including the credibility of witnesses, adduced at the hearing.

■ The Court's findings based upon the hearing include the following: Defendant Haruo Maruyama testified credibly that the decision to terminate Plaintiff's employment was made locally by himself and Takeshi Akazawa, the President of defendant Kinsho Int'l; Kinsho Int'l did not request permission from its parent,

Kinsho Mataichi, before terminating Plaintiff. (Transcript of Hearing at 85). Indeed, Maruyama explained that Kinsho Int'l was autonomous from its parent, Kinsho Mataichi, with respect to the hiring, firing and salary increases of all "local" support level employees such as Plaintiff.[4] (*Id.* at 87).

Maruyama's testimony is corroborated by that of Vern Lee Jarosak, an executive at defendant Kinsho Int'l. Jarosak testified credibly that the decision to terminate Plaintiff's employment was a joint local decision between himself, Maruyama and Akazawa. (*Id.* at 70). Jarosak further testified that, to his knowledge, Kinsho Mataichi does not approve the hiring or firing of support-level employees. (*Id.* at 71).

Plaintiff's own testimony about how she was hired by Kinsho Int'l is consistent with the testimony of Maruyama and Jarosak. Plaintiff testified that she was interviewed by Mr. Sakurai, who was President of Kinsho Int'l at the time Plaintiff was hired; that she was hired and began work on the very same day that she was interviewed; and that she had no contact with Kinsho Mataichi during the hiring process. (*Id.* at 37–38).

After due consideration of the evidence presented by the parties at the hearing on December 13, 1999, through live witnesses, exhibits, deposition testimony and stipulations, and having had the opportunity to assess the demeanor and credibility of the witnesses, and to review and weigh the evidence, the Court holds that Plaintiff has failed to establish that Kinsho Mataichi was in any way involved in the particular circumstances giving rise to the litigation. *See, e.g., Herman,* 18 F.Supp.2d at 311. *See also Duffy,* 1998 WL 252063 at *5.[5]

Accordingly, the Court holds that (i) Kinsho Int'l and Kinsho Mataichi do not constitute a "single employer"; (ii) Kinsho Int'l does not qualify as an "employer" under Title VII; and (iii) Plaintiff's Title VII claims against defendant Kinsho Int'l must be dismissed.

## Jurisdiction vs. Merits

The (only) issue that remains before judgment may be entered on the jury's verdict is whether the fifteen employee requirement of Title VII is to be regarded as a question of subject matter jurisdiction or is to be viewed as an aspect of the merits of Plaintiff's case. The Court of Appeals for the Second Circuit has explained that "[w]hile distinguishing between a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) and a dismissal for failure to state a claim under Rule 12(b)(6) appears straightforward in theory, it is often much more difficult in practice." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). Writing for the Court in *Nowak,* Judge Cabranes recognized that **"[g]enerations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases, described by Judge Friendly as a 'lesson [that] has been**

---

4. Plaintiff was hired in 1984 "for data processing department, just for entry data and computer operations." (Hearing Transcript at 23). At the time of her termination from employment in 1996, she held a clerical position in the Finance and General Affairs department. Support-level employees, such as Plaintiff, were also referred to as "clerical" and/or "local" employees during the hearing on December 13, 1999.

According to an organizational chart for defendant Kinsho Int'l dated February 3, 1995, of the six support-level or clerical employees (including Plaintiff), one was of Japanese origin. (Hearing Transcript at 48–49).

5. Nor did Plaintiff meet her burden of proof with respect to the other factors discussed in *Cook.*

taught as often in decision as it has been ignored in argument and dicta.'" *Id.* at 1188 (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 106 (2d Cir.1981))(emphasis added).

■ In the instant case, if dismissal of Plaintiff's Title VII claims against defendant Kinsho Int'l were deemed to be a matter of subject matter jurisdiction, the Court would have been precluded from exercising supplemental jurisdiction over Plaintiff's remaining state law claims. *See Nowak*, 81 F.3d at 1188 ("since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state claims"). However, if the dismissal of Plaintiff's Title VII claims were not "jurisdictional", it would be appropriate, now that a verdict is in, to enter judgment for the Defendants. The Courts holds, under *Nowak*, that the Title VII dismissal was not "jurisdictional."

The circuits are split on the issue of whether the number of employees (under Title VII) is a merits-based or jurisdictional question. *See, e.g., Sharpe v. Jefferson Distributing Co.*, 148 F.3d 676, 677–78 (7th Cir.1998), *abrogated on other grounds by*, 166 F.3d 937 (7th Cir.1999)("[a] plaintiff's inability to demonstrate that the defendant has 15 employees is just like any other failure to meet a statutory requirement .... [s]urely the number of employees is not the sort of question a court (including appellate court) must raise on its own, which a 'jurisdictional' characterization would entail"); *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 623–24 (D.C.Cir.1997)("[n]othing in Title VII (or the ADA) expressly limits the district courts subject matter jurisdiction"). *But*

see, e.g., *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir.1999) ("[a] district court lacks subject matter jurisdiction over an FMLA claim if the defendant is not an employer as that term is defined in the FMLA"); *Scarfo v. Ginsberg*, 175 F.3d 957, 961 (11th Cir.1999), *petition for cert. filed*, (U.S. Dec. 13, 1999)(No. 991012)("[u]nless the appellees constitute an employer 'who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year,' Title VII is inapplicable, and the district court lacks subject matter jurisdiction ..."); *Greenlees v. Eidenmuller Enterprises, Inc.*, 32 F.3d 197, 198 (5th Cir.1994)("[b]ecause the district court lacks subject matter jurisdiction over an employment agency that is sued in its capacity as an employer when the agency has fewer than fifteen employees, we affirm"); *Armbruster v. Quinn*, 711 F.2d 1332, 1335("[t]he essential question in this case is whether the plaintiffs' are barred from bringing their claim in federal court by the Title VII jurisdictional requirement of fifteen employees").

Although the Second Circuit has yet directly to address the issue at bar, the decision in *Nowak* strongly suggests that one must conclude that the instant dismissal of the Plaintiff's Title VII claim is merits-based rather than jurisdictional.[6] This Court is bound to follow Circuit precedent.

In *Nowak*, the complaint alleged that plaintiff's (Federal) claim for benefits "arose under" the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). However, pursuant to ERISA's "preemption provision" (29 U.S.C. § 1144) an ERISA claim does not

---

**6.** *But see Guadagno v. Wallack Ader Levithan Associates*, 125 F.3d 844, 1997 WL 609007 (2d Cir.1997)(unpublished table decision).

lie where (1) the plaintiff's asserted claim accrued, or (2) the relevant act or omission that served as the basis for the plaintiff's claim occurred before January 1, 1975. *See Nowak*, 81 F.3d at 1189. The District Court (Foschio, J.) determined that the "relevant act or omission" occurred in 1973 and, thus, dismissed the claim for lack of subject matter jurisdiction. *Id.* at 1189–90. Though affirming the dismissal, the Second Circuit concluded that the dismissal was on the merits; i.e. it was not properly regarded as a dismissal for lack of subject matter jurisdiction as it was characterized by the District Court. *Id.* at 1191. The *Nowak* court explained that "we believe that, under the circumstances presented here, [the District Court's] very inquiry into the matter indicates that Nowak's claim should have been dismissed on the merits; rather than for lack of subject matter jurisdiction." *Id.* at 1190. In reaching this conclusion, the Second Circuit explained that:

the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances. In the words of Professor Moore, 'if a federal statute upon which a claim is premised is interpreted to be inapplicable, it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, the courts have uniformly held that in such instances the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12(b)(6)] or Rule 56.'

*Id.* at 1188 (citation omitted). The *Nowak* Court observed that "[t]here can be no doubt that on its face Nowak's complaint claims a right of action under federal law, namely ERISA. Paragraph 4 of the amended complaint states: 'This action arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).'" *Id.* at 1190. Thus, the Court held that:

"Because Nowak's asserted basis for federal question jurisdiction survives facial scrutiny and is neither immaterial nor insubstantial, we find that the district court erred in characterizing its dismissal of Nowak's claim as one for lack of subject matter jurisdiction. **Insofar as Nowak's jurisdictional allegations were not frivolous on their face, his claim deserved at least 'a preliminary review on the merits.'**"

*Id.* (emphasis added). The analysis in *Nowak* closely parallels the Seventh Circuit's analysis in *Sharpe*. Writing for the Court in *Sharpe*, Judge Easterbrook explained that "Sharpe presents a non-frivolous claim under federal law; no more is necessary for subject-matter jurisdiction." *Sharpe*, 148 F.3d at 677.[7]

In deciding *Nowak*, the Second Circuit recognized "that other courts have spoken of [ERISA] § 1144 in 'jurisdictional terms.'" *Nowak*, 81 F.3d at 1190. However, the Court went on to state that:

We believe that the inquiry necessary to assess a claim's satisfaction of the § 1144 criteria—— i.e., whether the cause of action arose or the relevant act or omission resulting in the denial of benefits occurred after January 1, 1975—— is so bound up in the merits of the claim,

---

7. As noted above, in February, 1998, Defendants filed a motion to dismiss for lack of subject matter jurisdiction which motion was denied by Judge Martin. (*See* Order). This Court views Judge Martin's denial of the motion and Order as an (implicit) determination that Plaintiff's claim under Title VII was not frivolous. *See Nowak*, 81 F.3d at 1190; *Sharpe*, 148 F.3d at 677.

that if a court determines that a plaintiff has failed to satisfy § 1144, dismissal should be under 12(b)(6) for failure to state a claim, rather than under 12(b)(1). *Id.* at 1191.

Similarly, in the case at bar, the inquiry (as to number of employees) necessary to assess Plaintiff's Title VII claim was so bound up in the merits of the claim that the Court's determination (more) appropriately warrants dismissal under Fed. R.Civ.P. 12(b)(6) for failure to state a claim than under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. *See Nowak,* 81 F.3d at 1188–92; *Sharpe,* 148 F.3d at 677–78; *St. Francis Xavier Parochial School,* 117 F.3d at 623–24.

**Supplemental Jurisdiction**

■ Because the Plaintiff's Title VII claims (i.e., her federal claims) against defendant Kinsho Int'l were dismissed by the Court on the merits **after** the parties had completed jury selection and opening statements, it was appropriate, for reasons of fairness, judicial economy and convenience, among others, for the Court to exercise jurisdiction over the pendent state law claims, complete the trial and now enter judgment for Defendants. *See, e.g., Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 545–46 (2d Cir.1989)("[u]nder such circumstances, it would have been a pointless waste of judicial resources to require a state court to invest the time and effort necessary to familiarize itself with a case well-known to the presiding federal judge. It would have been unfair to the plaintiffs to transfer a case scheduled for trial within days in federal court to a state tribunal where it would have had to wait perhaps months to be heard").

*Conclusion*

Accordingly, for the reasons set forth above, Plaintiff's claims against Kinsho Int'l were properly dismissed and the Court properly exercised jurisdiction over the pendent state law claims. The Clerk is respectfully directed to enter judgment on the verdict and close this case.