319 F.Supp.2d 963 (2004)
Maryanne SCHUBERT, Plaintiff,
v.
BETHESDA HEALTH GROUP, INC., et al., Defendant.
No. 4:03CV0136 CEJ.
United States District Court, E.D. Missouri, Eastern Division.
May 21, 2004.
*964 David M. Heimos, Heimos Law Office, Clayton, MO, for Plaintiff.
Kenneth W. Bean and Bryan P. Cavanaugh of Sandberg, Phoenix & von Gontard, P.C., St. Louis, MO, for Defendant.

MEMORANDUM AND ORDER
JACKSON, District Judge.
Plaintiff Maryanne Schubert brings this action against defendants alleging discrimination and/or retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 *965 U.S.C. §§ 2601 et seq. Before the Court is plaintiff's brief relating to the Court's subject matter jurisdiction.

I. Background and Procedural History

Plaintiff began her employment with Bethesda Health Group, Inc. ("BHGI") in May of 1991 as a staff nurse. Over the years she worked in various nursing positions on behalf of the company. On August 22, 2001 plaintiff took a job as a registered nurse at the Bethesda Southgate facility. Plaintiff left her employment at the Bethesda Southgate facility on September 1, 2001, and she returned to work at the facility on January 2, 2002 as the Assistant Director of Nursing. She was physically located at the Bethesda Southgate facility through April 3, 2002. The circumstances of plaintiff's separation from her employment after April 3, 2002 are the subject of some dispute.
In June of 2003, defendant BHGI filed a summary judgment motion arguing that it was not plaintiff's employer when she separated from her position at Bethesda Southgate. BHGI further argued that even if the Court was able to find that it was her employer, it could not be held liable because it did not employ the requisite number of employees.[1] Specifically, BHGI asserted that plaintiff was employed by Bethesda Long Term Care, Inc. ("BLTCI") during the time she worked at Bethesda Southgate. As a result of defendant BHGI's allegations, plaintiff amended her complaint to add BLTCI as a second defendant. In January of 2004, defendant BLTCI filed its own summary judgment motion, asserting that it could not be held liable under the FMLA because plaintiff was not an "eligible employee" because she did not work the requisite number of hours at Bethesda Southgate.[2] Plaintiff, in response, argued that there was a genuine issue of material fact as to whether plaintiff was employed by both BHGI and BLTCI under theories such as the "integrated employer" test and the "joint employer" test, thus, there was also a genuine issue of material fact as to whether she was an "eligible employee" suing a statutory "employer."[3] The Court agreed with plaintiff, and on March 9, 2004, denied the summary judgment motions and directed plaintiff to file a brief setting forth the evidence supporting her assertions that BHGI and BLTCI were either joint employers and/or integrated employers under the FMLA. Proof of the fifty employee minimum is a jurisdictional prerequisite to bringing suit under the FMLA. See Douglas v. E.G. Baldwin & Assoc., Inc., 150 F.3d 604, 608-609 (6th Cir.1998); Hukill v. Auto Care, Inc., 192 F.3d 437, 441-442 (4th Cir.1999). Thus, if plaintiff cannot prove that BHGI and BLTCI were either joint employers and/or integrated employers under the FMLA, then she cannot prove that she is an "eligible employee" or that she sued a statutory "employer." If plaintiff fails to prove the above, her complaint *966 must be dismissed for lack of subject matter jurisdiction.

II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for a dismissal based on a court's lack of subject matter jurisdiction to hear the case. Dismissal under Rule 12(b)(1) is appropriate if the issue before the court is whether the plaintiff has failed to satisfy a threshold jurisdictional requirement. See Trimble v. Asarco, Inc., 232 F.3d 946, 955 n. 9 (8th Cir.2000). In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir.1993). In a facial attack, the court restricts itself to the face of the pleadings, and all of the factual allegations concerning jurisdiction are presumed to be true. Id. However, in a factual challenge, the court considers matters outside of the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations. See Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir.1990). Furthermore, the existence of disputed material facts does not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Id. at 729. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction  its very power to hear the case  there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. Moreover, the plaintiff has the burden of proof that jurisdiction does in fact exist. Id.

III. Discussion

A. The Integrated Employer Test
Under the integrated employer test, several companies may be considered so interrelated that they constitute a single employer. See Radio & Television Broadcast Technicians Local 1264 v. Broadcast Serv. of Mobile, Inc., 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). The federal regulations interpreting the FMLA provide the following factors for the court to consider in determining whether two or more entities constitute an integrated employer: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. 29 C.F.R. § 825.104(c)(2). "Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employee coverage and employee eligibility." Id. Common ownership alone is insufficient to justify consolidation for counting purposes. See, e.g., Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir.1993) (holding that only one common manager, no unified day-to-day operational control, and common ownership is insufficient to establish interrelation needed to consolidate); Sedlacek v. Hach, 752 F.2d 333, 334-336 (8th Cir.1985) (holding that two companies that shared employees, management, equipment, location and employee benefit programs in addition to near total common ownership produces "substantial identity" needed to consolidate for counting purposes). Although no single factor is conclusive, control of labor operations seems to be the most critical factor. See Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir.1997)(recognizing that control of labor relations prong has traditionally been the most important); Pulitzer Publishing Company v. National Labor Relations Board, 618 F.2d 1275, 1278-1279 (8th Cir.1980)(finding that the first three factors, the third factor in particular, are the focus of the analysis because they illustrate the extent to which the entities are functionally integrated) quoting Parklane *967 Hosiery Company, Inc., 203 N.L.R.B. 597, 612, 1973 WL 12406 (1973), amended on other grounds, 207 N.L.R.B. 991, 1973 WL 4704 (1973).

1. Common Management
Plaintiff has produced evidence that both BHGI and BLTCI shared the exact same officers, and nearly identical directors, in 2001, 2002 and thereafter. Plaintiff has also shown that, as indicated in the 2001 and 2002 annual registration reports of BHGI and BLTCI, both entities stated a similar corporate purpose: to own and operate charitable healthcare, residential and skilled nursing facilities for the elderly and to provide skilled nursing and assisted living services. Furthermore, each of the entities has had its principal place of business or corporate headquarters at the same address, and each of the entities has had the same registered agent. These factors tend to support plaintiff's assertion that BHGI and BLTCI are integrated employers under the FMLA. See Mastell Trailer Corporation v. NLRB, 682 F.2d 753, 755 (8th Cir.1982) (holding that separate companies are treated as a single employer where they shared common management and offices); Scheidecker v. Arvig Enterprises, Inc., 122 F.Supp.2d 1031, 1038 (D.Minn.2000)(holding that separate companies are treated as a single employer where they shared common management and board membership); Baker v. Stuart Broadcasting Co., 560 F.2d 389, 392 (8th Cir.1977)(common management found where parent and subsidiary had same officers and directors).

2. Interrelation of Operations
The record shows that there is some interrelation of operations between BHGI and BLTCI. One factor tending to show the interrelationship between the two companies is the fact that employees can transfer from one entity to another if there is an available position.[4]See Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir.1983) (finding an interrelation of operations when one company allowed employees to transfer between the parent company and its subsidiaries). Furthermore, the fact that BHGI handles BLTCI's payroll also indicates interrelation of operations.[5]Armbruster, 711 F.2d at 1338 (noting an interrelation of operations when two companies used the same work force and handled each other's payroll); McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933-934 (11th Cir.1987)(finding that parent's operations were interrelated with those of subsidiary when parent issued its paychecks); but see Hukill, 192 F.3d at 443-444(indicating that the mere fact that one company purchases administrative services from another company is not dispositive of this element).

3. Centralized Control of Labor Relations
Although defendants deny that there is a centralized control of labor relations, there is evidence in the record that shows that BHGI has some control over BLTCI's employee relations. A brief look at the facts illustrates this conclusion.
Defendants admit that from March 1, 2000 to August 21, 2001 plaintiff was employed *968 by BHGI as a Community Care Coordinator. Defendants also admit that from August 22, 2001 to September 1, 2001 and January 2, 2002 to April 7, 2002, plaintiff was employed by Bethesda Southgate, an operating division of BLTCI, first as a registered nurse, and then as Assistant Director of Nursing. Defendant BHGI asserts that plaintiff's supervisor, while working at Bethesda Southgate, was Michelle Kimball, who was employed as Director of Nursing at Bethesda Southgate from October 16, 2000 to April 11, 2003. Kimball has testified by affidavit that she had the authority to terminate plaintiff's employment. Christy Roberts has also testified by affidavit that she was the Human Resources Manager at Bethesda Southgate during plaintiff's employment.
Although this evidence seems to show that BLTCI had control over its own labor relations, there is evidence in the record showing that officers at BHGI also had control over BLTCI's employment decisions. After plaintiff's employment ended, she received two letters from Katherine Joslin, Vice President and Director of Human Resources of BHGI. Ms. Joslin stated in her May 24, 2002 letter that she was "investigating the situation" of plaintiff's employment status. Ms. Joslin stated in her June 13, 2002 letter that she had "thoroughly reviewed the situation and events leading up to the end of [plaintiff's] employment with all parties involved... [a]s a result, we will not be changing the last day of [plaintiff's] employment with Bethesda Southgate, that date being April 26, 2002." (emphasis added). Furthermore, BHGI was listed as plaintiff's employer on her W-2 Wage and Tax Statement for the years 2001 and 2002. Moreover, when plaintiff started work at Bethesda Southgate, she completed forms entitled "Bethesda Health Group, Inc. Employment Record" and "Bethesda Health Group, Inc. Authorization for Payroll Deductions." In addition, the employee handbook applicable to plaintiff when she was physically located at the Bethesda Southgate facility is labeled "Bethesda Health Group, Inc. Employee Handbook," and on page 2 of the handbook, under the heading "Historical Background," it states "...Bethesda Health Group, Inc. and its related entities(referred to in this Handbook as "Bethesda")..." In fact, plaintiff has produced many other employment documents with BHGI's name in the title that plaintiff signed during her tenure at Bethesda Southgate. All of these factors, when taken together, show that BHGI had some control over BLTCI's labor relations. See Smith v. Jones Warehouse, Inc., 590 F.Supp. 1206, 1208 (N.D.Ill.1984) (finding centralized control of labor relations when parent issued personnel policies and was listed as employer on the W-2 forms of subsidiary's employees).
Defendants argue that the employee documents in no way reflect the business or operations of BHGI and BLTCI.[6] Defendants assert that the documents merely "reflect that BLTCI used some employment forms with BHGI's name on them," and that "BLTCI's use of some of BHGI's forms does not itself suggest that there was the requisite centralized control of labor relations." Defendants cite to the case of Papa v. Katy Indus., Inc., 166 F.3d 937, 942 (7th Cir.1999), to bolster their assertions.
In Papa, the Seventh Circuit addressed the application of the integrated employer test in the context of determining whether affiliated corporations were proper defendants under Title VII even if they did not meet the minimum employee requirements *969 of Title VII. Id. at 939. The court criticized the vagueness of three of the four factors in the test, holding that the four factors often do not yield a conclusive decision in discrimination cases. The court also noted that the test was not custom-designed for answering exemption questions under the anti-discrimination laws, but instead was copied from the test used by the National Labor Relations Board to resolve issues of affiliate liability under the laws administered by the board. Id. at 940. Thus, the court held that the test should be abrogated in Title VII cases. Id. at 941-943.[7] Defendants argue that Papa rightly noted that "firms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies..." Id. at 942. Thus, defendants assert that "this necessary level of sharing must be factored into the analysis of whether to integrate the two defendants..." The Court disagrees. What defendants are essentially asking the Court to do is to ignore the third factor of the integrated employer test and find that a centralized control of labor relations is not a decisive factor to consider when trying to determine whether a defendant has the requisite number of employees to be held liable. What defendants fail to recognize is that the regulations require consideration of all four factors, see 29 C.F.R. § 825.104(c)(2), and the Court believes that § 825.104(c)(2) is entitled to deference. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (noting that an agency's interpretation of a statute with which it has been charged with administering and which has been reduced to a regulation is to be fully accepted by a court as long as Congress has not directly spoken as to the precise question at issue and the interpretation proffered by the agency is a permissible one).

4. Degree of Common Ownership/Financial Control
Although plaintiff has not addressed the degree of common ownership/financial control factor, there is some evidence in the record regarding this factor. As noted above, the two entities had almost identical officers and directors. In addition, BHGI is the sole corporate member of BLTCI, and BHGI's two corporate members are BLTCI and Bethesda Senior Living, Inc. However, these factors, by themselves, do not establish common ownership and financial control. See Johnson v. Flowers Indus., Inc., 814 F.2d 978, 982 (4th Cir.1987) ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying an alter ego theory to pierce the corporate veil."). Nonetheless, when this evidence is considered with the evidence discussed under the other three factors, the Court finds that it is apparent that there is such an interrelation of operations between BHGI and BLTCI that both entities can be considered to be plaintiff's employer. Thus, the Court has subject matter jurisdiction of this action.

*970 B. The Joint Employment Test
Plaintiff also argues that BHGI and BLTCI were joint employers. Although the Court has already found that the two employers were integrated, such that they can both be held accountable for plaintiff's allegations, the Court feels compelled to address plaintiff's joint employer argument as well.
In a joint employer relationship the analysis assumes separate legal entities exist but that they have chosen to handle certain aspects of their employer-employee relationships jointly. See NLRB v. Browning-Ferris Indus. of Pennsylvania, Inc., 691 F.2d 1117, 1122 (3rd Cir.1982). The issue of joint employment liability is addressed in 29 C.F.R. § 825.106, which provides:
(a) Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
(2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or
(3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.
(b) A determination of whether or not a joint employment relationship exists is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality...
(d) Employees jointly employed by two employers must be counted by both employers, whether or not maintained on one of the employer's payroll, in determining employer coverage and employee eligibility...
The regulation does not provide much guidance to assist courts in defining the exact boundaries of a joint employment relationship, and the Court was unable to find any cases from the Eighth Circuit Court of Appeals that addressed the joint employment relationship within the FMLA context. The only circuit that has addressed this issue, the Ninth Circuit, looked to case law and regulations from the Fair Labor Standards Act ("FLSA") to help it determine whether an entity was a joint employer for purposes of the FMLA. See Moreau v. Air France, 356 F.3d 942, 946 (9th Cir.2004). As that court noted, "[T]he FMLA employs a number of definitions from the FLSA, 29 U.S.C. § 2611(3), and the FMLA joint employer regulation mirrors the wording of the FLSA joint employment regulations. Compare 29 C.F.R. § 825.106 with 29 C.F.R. § 791.2(b)." In light of the reasoning espoused in Moreau, this Court will also look to FLSA caselaw to determine the appropriate joint employer test under the FMLA.[8],[9]
*971 "The Supreme Court has instructed that courts are to interpret the term `employ' in the FLSA expansively." Hale v. Arizona, 993 F.2d 1387, 1393 (9th Cir.1993). Accordingly, employment status is determined based on the economic reality of the relationship between the plaintiff and defendants, rather than concepts of agency law. See Hale, 993 F.2d at 1393. The Eighth Circuit has not yet set out a test to determine whether an entity may be held to be a joint employer under the FLSA or the FMLA. However, several courts have applied a four factor test. See Baker v. Stone County, Missouri, 41 F.Supp.2d 965, 980 (W.D.Mo.1999); Catani v. Chiodi, No. Civ. 00-1559, 2001 WL 920025, *6 (D.Minn. Aug. 13, 2001); Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir.1998); Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir.1983). In keeping with the aforementioned, the Court will also apply a four factor test to determine joint employment. Thus, the Court must determine whether the alleged employer: (1) had the power to hire and fire the plaintiff; (2) supervised and controlled plaintiff's work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained plaintiff's employment records. Baker, 41 F.Supp.2d at 980.
Plaintiff argues that she was still employed by BHGI at the time she was physically located at the Bethesda Southgate facility. Thus, plaintiff asserts that BHGI and BLTCI jointly employed her. After a review of the record, the Court finds that plaintiff has not met her burden of showing a joint employer relationship between BHGI and BLTCI.

1. Power to Hire and Fire
Defendants have submitted an affidavit from Michelle Kimball, Director of Nursing at Bethesda Southgate, testifying that she set plaintiff's hours and schedule and had the authority to terminate her employment. Plaintiff admits in her deposition testimony that she was hired by Michelle Kimball and Sharon Warren, the Administrator at Bethesda Southgate. Thus, these factors seem to show that BLTCI was plaintiff's employer. However, neither Sharon Warren nor Michelle Kimball have testified that they were the only individuals who had the power to hire and fire plaintiff. Indeed, there is some evidence in the record that Kathy Joslin, Vice President and Director of Human Resources for BHGI might have been able to reverse the decision to terminate plaintiff's employment. (See Ms. Joslin's May 24, 2002 letter stating that she was "investigating the situation" of plaintiff's employment status). However, there is simply not enough information in the record to affirm this contention. As such, the Court must find that plaintiff has not produced enough evidence to show that BHGI and BLTCI both had the power to hire and fire her.

*972 2. Supervision of Employee
Michelle Kimball testified by affidavit that she was plaintiff's immediate supervisor at Bethesda Southgate and that she controlled plaintiff's schedule and had the right to discipline her. Plaintiff has not produced any evidence that someone at BHGI also had the right to supervise her and discipline her. Thus, this factor weighs in favor of defendants' denial of joint employment.

3. Determination of Rate and Method of Pay
The record is somewhat confusing regarding which entity determined plaintiff's rate and method of pay. Although Steven Gosik, Senior Vice President and Chief Financial Officer of BHGI, testified that BLTCI "paid [plaintiff's] salary and benefits," plaintiff's paychecks were actually issued by BHGI. In an attempt to explain this discrepancy, Mr. Gosik testified by affidavit that BHGI "serves as the common paymaster and payroll administrator for... Bethesda Long Term Care, Inc. and Bethesda Senior Living, Inc. and for Bethesda Services, Inc." Thus, defendants contend that BLTCI simply outsources its payroll duties to BHGI. The Court is suspect of this assertion in light of the fact that plaintiff's W-2 forms also identified BHGI as her employer. However, because plaintiff has failed to provide the Court any other information regarding which entity determined plaintiff's rate and method of pay, the Court cannot say that there is sufficient evidence of a joint employer relationship based on this factor.

4. Maintenance of Employee Records
The record is devoid of any mention of who maintained plaintiff's employment records. Thus, this factor cannot weigh in plaintiff's favor.
Because it is the plaintiff's burden to prove jurisdiction, the Court must find that plaintiff has failed to show a joint employer relationship between BHGI and BLTCI. However, as noted above, plaintiff has shown that BLTCI and BHGI were integrated employers such that the Court finds that plaintiff was an "eligible employee" of a statutory "employer" under the FMLA.
Accordingly,
IT IS HEREBY ORDERED that this Court has subject matter jurisdiction of this action.
NOTES
[1] The FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A).
[2] The term "eligible employee" means "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested...and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).
[3] Under theories such as the "joint employer" test or the "integrated employer" test, all of the employees of separate entities are counted together to determine if the 50 employee minimum is met.
[4] Plaintiff made a request to transfer from the Bethesda Southgate facility on March 25, 2002. She turned the transfer form into her supervisor, Michelle Kimball (previously known as Michelle Coleman), who signed the form. In relation to her request for transfer, plaintiff testified that she spoke with several individuals at BHGI, including Gerri Olliges, of Bethesda Health Group Corporate Human Resources, and Kathy Joslin, BHGI Vice President and Director of Human Resources.
[5] Defendants admit that BHGI serves as the common paymaster and payroll administrator for its two corporate members, BLTCI and Bethesda Senior Living, Inc., and for Bethesda Services, Inc.
[6] Defendants do not address the importance of the interaction between plaintiff and Katherine Joslin, Vice President and Director of Human Resources of BHGI.
[7] After rejecting the use of the integrated employer test, the Seventh Circuit set out its own test to determine whether an employer with too few employees to be covered by the ADA, Title VII and ADEA should nonetheless be covered because it was part of an affiliated group of corporations who in the aggregate had the requisite number of employees. The court identified three situations in which corporate entities that are affiliated should be considered a single employer: (1) where the conditions for piercing the corporate veil are present; (2) where an enterprise splits itself into a number of corporations, each with fewer than the statutory minimum number of employees in order to avoid liability under the discrimination laws; or (3) where the parent corporation took the specific action of which the employee of its subsidiary is complaining. Papa, 166 F.3d at 940-941.
[8] After reading a Department of Labor ("DOL") Opinion Letter on this issue, the Court is even further convinced that it should apply the "joint employer" standards established under the FLSA to the case at hand. In an opinion letter released by the DOL on September 11, 2000 the DOL stated, "The standards established under the Fair Labor Standards Act (FLSA) are used to determine joint employment under the FMLA." 2000 DOL FMLA LEXIS 4 (September 11, 2000) at *4. As the agency directed to interpret and enforce the FMLA, the DOL's interpretation of its own regulations should be given significant deference. See Thomas Jefferson University v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).
[9] Plaintiff asserts that the Court should consider the same four factors of the "integrated employer" test to the "joint employer" test. Based on the DOL's interpretation of the "joint employer" test under the FMLA, the Court disagrees.